IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| H. REID KEY, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 23-00386-TFM-B |
| | * | |
| CHANTELLE S. VALLELY, | * | |
| | * | |
| Defendant. | * | |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiffs H. Reid Key and Kristen F. Key's Motion to Remand. (Doc. 4). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiffs' motion (Doc. 4) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Baldwin County, Alabama.

### I. BACKGROUND

Plaintiffs H. Reid Key and Kristen F. Key commenced this declaratory action against Defendant Chantelle S. Vallely ("Vallely") in the Circuit Court of Baldwin County, Alabama on September 7, 2023. (Doc. 1-1). The parties are adjacent waterfront landowners of real property located along Mobile Bay. (Id. at 3-4). As a result, the parties share a common riparian

boundary, with Vallely's property being located to the north of the Keys' property.  (Id. at 4).

The complaint alleges that Vallely intends to construct a wharf that will encroach upon the Keys' riparian territory and impermissibly interfere with the navigability of their riparian zone and ability to make full use of their riparian rights.  (Id. at 5).  According to the Keys, Vallely's proposed wharf will result in the destruction of a portion of their pier structures and alter the current riparian boundary dividing the properties as it has been maintained by the Keys and their predecessors-in-title for the past thirty years.  (Id.).  As such, the Keys request a declaration that they have established the riparian boundary by adverse possession; as well as a declaratory judgment determining the nature and location of a wharf which Vallely can properly construct within her riparian zone.  (Id. at 7).

Vallely timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1).  That same day, Vallely filed an answer and counterclaim, asserting that the Keys are claiming riparian territory that would prevent her from constructing a wharf, and impeding her statutory right to "wharf out" to navigable water.  (Doc. 2 at 4).

In her notice of removal, Vallely asserts that the amount in controversy threshold is satisfied as "[r]iparian rights are

essential to the value of these lots along Mobile Bay[,]" and an "informal opinion" of an appraiser "has confirmed that the riparian area at issue, and its intrinsic impacts to the associated subject lots, would easily exceed $75,000.00 in value." (Doc. 1 at 3). Presently pending before the Court is the Keys' motion seeking remand of this action to state court. (Doc. 4). They argue that Vallely has failed to establish that the amount in controversy exceeds the jurisdictional minimum. (See id.). Vallely filed a response in opposition, and the Keys filed a reply. (Docs. 7, 8). Having been fully briefed, the motion to remand is ripe for resolution.

## II. STANDARD OF REVIEW

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id.

A defendant is permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. See 28 U.S.C. § 1441. This includes

actions where the federal court has jurisdiction under 28 U.S.C. § 1332(a), which requires complete diversity of citizenship between the plaintiff and defendants and an amount in controversy that exceeds $75,000.00, exclusive of interest and costs.  See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)).

In actions seeking injunctive or declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."  Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted).  In other words, "the value of declaratory relief is the 'monetary value of the benefit that would flow to the plaintiff if the [requested relief] were granted.'"  S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1316 (11th Cir. 2014) (quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000)).  If the value of that relief is speculative or immeasurable, then it cannot satisfy the amount in controversy as a matter of law.  See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc., 120 F.3d 216, 221-22 (11th Cir. 1997) (finding the value the plaintiff could receive from the injunctive relief "too speculative and immeasurable to satisfy the amount in controversy requirement" because even if the plaintiff was awarded an injunction voiding the contract entered into by the City of Birmingham and the defendant, there was no

guarantee that the city would be required to rebid the project or to choose the plaintiff if it did rebid the project); Mitchell v. GEICO, 115 F. Supp. 2d 1322, 1327 (M.D. Ala. 2000) (observing that sometimes the full value of requested injunctive or declaratory relief is too speculative to establish the amount in controversy); Lutz v. Protective Life Ins. Co., 328 F. Supp. 2d 1350, 1359 (S.D. Fla. 2004) (monetary value of benefit to plaintiffs from requested equitable relief must be sufficiently measurable and certain to satisfy the amount in controversy, and cannot be considered if it is not).

**III. DISCUSSION**

There is no dispute that the parties are of diverse citizenship and the object of the litigation is the riparian boundary dividing the properties.[1]  Thus, the only question before the Court is whether Vallely has established by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.

The parties acknowledge that there is little precedent for evaluating the value of a riparian boundary, however, the Keys provide the following standard in their motion to remand:

> In an action to adjudicate rights to waters upon which the plaintiff's land borders, the amount-in-controversy requirement is not satisfied by an allegation that the land bordering the water is worth an amount exceeding the jurisdictional amount because the amount in controversy is the value of the riparian rights or the

---

[1] The Keys are citizens of Alabama and Vallely is a citizen of Georgia.

> damage to the land by reason of the interference with the water rights. Federal Procedure, Lawyers Edition § 56:1902 Amount-in-controversy requirement in federal litigation over water rights (citing Leitch v. City of Chicago, 41 F.2d 728 (7th Cir. 1930)).

(Doc. 4 at 5).

In response, Vallely proffers her own method for calculating the value of the riparian rights at issue.[2]  To begin, Vallely posits that the value of her "unobstructed riparian rights" are one-third of her land's total value, which amounts to $558,277.50 (1/3 of $1,675,000.00).  (Doc. 7 at 4).  Next, Vallely relies on property surveys and boundary overlays of the parties' properties to deduce the disputed riparian territory to 14.76% of her total riparian zone.  (Id.).  Thus, according to Vallely, because the Keys are seeking to take "14.76% of [her] riparian area," which amounts to $82,401.75 (14.76% of $558,277.50), the amount in controversy is $82,401.75.  (Id.).[3]

---

[2] Although Vallely references the informal opinion of an appraiser in her notice of removal, no appraisal report has been provided to the Court.  Notably, it is questionable whether the report would have shed any light on the issue before the Court given that Vallely concedes the appraiser did not have sufficient time to prepare a comprehensive appraisal report.  (See Doc. 7 at 2).

[3] In calculating the amount in controversy, Vallely submits tax assessments to show the value of the parties' properties along with the affidavit of Gray Vallely, her husband, who has an engineering degree and experience with 3-D design and technical software.  However, this evidence is still based on what the Keys are purportedly taking from Vallely.  (See Docs. 1-3; 7-1).

However, Vallely's method is not the proper standard for determining the amount in controversy as it is based on what she purportedly stands to <u>lose</u> if the Keys obtain the relief they seek.[4]  Value must be assessed from the perspective of the plaintiff, and there are no allegations indicating that the Keys are seeking to acquire a specific swath of Vallely's riparian territory.  Rather, it appears that if the Keys receive their requested relief, a portion of their pier structures will not be destroyed, and they will continue to enjoy the riparian area they already have.  Thus, the amount in controversy is the difference between the value of the Keys' riparian territory as it now exists and its value if Vallely is allowed to go forth with her planned wharf.  The record currently before the Court does not contain sufficient information to allow the Court to reasonably discern the difference in value and thereby ascertain the amount in controversy.[5]  As such, the Court cannot determine the amount in

---

[4]  Vallely's reliance on an arbitrary "one-third" metric to establish the amount in controversy is speculative at best. Indeed, there is nothing in the record to suggest that riparian rights are valued at one-third of the value of the homes along Mobile Bay.

[5]  The Court notes that Gray Vallely submitted an affidavit which references a May 2023 email from Plaintiff H. Reid Key stating that if the proposed pier is constructed, the Keys' property will lose value "by being restricted to never being able to expand their pier in any direction or add another structure."  However, there is nothing in the record establishing what that potential loss in value may numerically entail, and it was sent before the complaint was filed.  (See Doc. 7-1).

controversy without engaging in speculation and conjecture. See
USAmeribank v. Plantation Oaks Homeowners Ass'n, 2017 U.S. Dist.
LEXIS 119816, at *15-16 (M.D. Ala. July 28, 2017), adopted by,
2017 U.S. Dist. LEXIS 146967, 2017 WL 4011018 (M.D. Ala. Sept. 12,
2017) (the amount in controversy was determined by the difference
between the value of the property with the covenants and the value
of the property without the covenants.).[6]    Accordingly, the
undersigned finds that Vallely has not satisfied her burden of
establishing the amount in controversy; thus, the Keys' motion to
remand is due to be granted.

**III. <u>CONCLUSION</u>**

---

[6] In <u>USAmeribank v. Plantation Oaks Homeowners Ass'n</u>, the plaintiff
bank filed a declaratory action contending that declarations and
amendments adopted by a homeowners' association ("HOA") were not
enforceable against the bank as the successor to the defaulting
developer.  The HOA sought  summary judgment on the ground that
the plaintiff bank failed to establish the amount in controversy.
The court observed that "when a plaintiff seeks injunctive or
declaratory relief, the amount in controversy is the monetary value
of the object of the litigation from the plaintiff's perspective"
or "the monetary value of the object of the litigation that would
flow to the plaintiff if the injunction were granted."  2017 U.S.
Dist. LEXIS 119816, at *12-14 (citations omitted).   The court
held that the value that the bank stood to gain (by an order
declaring the declarations and amendments unenforceable) could not
be measured by the total value of the lots it acquired as a result
of the default but was instead measured by the difference between
the value of the property with the covenants, and the value of the
property without the covenants.  <u>Id.</u> at *14-15. In the absence of
admissible evidence of the value of the property with the covenants
and the value without the covenants, the court found that the
amount in controversy was not established; thus, jurisdiction was
lacking.  <u>Id.</u> at *15-16.

For the reasons set forth above, the undersigned recommends that Plaintiffs' motion to remand (Doc. 4) be **GRANTED**, and that this action be **REMANDED** to the Circuit Court of Baldwin County, Alabama, pursuant to 28 U.S.C. § 1447(c).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this **2nd** day of **August, 2024.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**
